UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOVANY ALEXANDRE,<br><br>    Plaintiff,<br><br>    v.<br><br>KEVIN COLANNINO and BRIAN NICHOLS,<br><br>    Defendants. | Case No. 22-cv-11342-DJC |

### MEMORANDUM AND ORDER

**CASPER, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　February 16, 2023

**I.　Introduction**

Plaintiff Jovany Alexandre ("Alexandre") has filed this lawsuit against Kevin Colannino ("Colannino") and Brian Nichols ("Nichols") (collectively, "Defendants") relating to a harassment prevention order issued against Alexandre by the Chelsea District Court. D. 1. Alexandre moved to amend his original complaint, D. 8, and Defendants moved for dismissal of the amended complaint, D. 19; D. 21. Alexandre subsequently moved for leave to file another amended complaint, D. 24, which Defendants oppose, D. 27; D. 28. For at least the reasons stated below, the Court ALLOWS Alexandre's first motion to amend, D. 8, ALLOWS Defendants' motions to dismiss, D. 19; D. 21, and DENIES Alexandre's second motion to amend, D. 24.

**II.　Standard of Review**

  **A.　Motion to Dismiss**

A defendant may move to dismiss for a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a Rule 12(b)(6) challenge, the Court

1

must determine if the complaint "plausibly narrate[s] a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (citations omitted). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. (citation omitted). Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. (citation omitted). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678).

### B. Motion to Amend

"[W]hen justice so requires," leave to amend pleadings should be "freely given[n]." Fed. R. Civ. P. 15(a)(2). Courts, however, retain considerable discretion in deciding whether to allow or deny leave to amend. U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009) (citation omitted). That discretions allows courts to deny leave for reasons such as "undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment." Id. (citing cases). Futility depends upon whether the proposed amendment "plead[s] enough [facts] to make out a plausible claim for relief." HSBC Realty Credit Corp. (USA) v. O'Neill, 745 F.3d 564, 578 (1st Cir. 2014) (citing cases). As such, in assessing futility, courts apply "the same standard of legal sufficiency as

applies to a Rule 12(b)(6) motion." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996) (citing 3 Moore's Federal Practice P 15.08[4], at 15–81 (2d ed. 1993)).

### III.  Factual Background

The following facts are drawn from Alexandre's proposed second amended complaint, D. 24,[1] and supporting exhibits, D. 24-1, and are accepted as true for the purpose of resolving the second motion to amend.

Colannino is a police officer in the Revere Police Department, while Nichols is a court officer employed by the Massachusetts Trial Court and assigned at the Chelsea District Court. D. 24 at 3. Alexandre met Eugene Benoit ("Benoit") in May 2021 and developed a business relationship and friendship. Id. at 4. Their relationship eventually soured, and, on April 25, 2022, another Revere Police Officer and Colannino helped Benoit obtain a harassment prevention order against Alexandre. Id. at 4–6, 8. After the order was issued by the Chelsea District Court, Alexandre alleges he was served with it by another Revere Police Officer on April 30, 2022. Id. at 6; D. 24-1 at 11. Alexandre also alleges that Nichols signed a return of service, indicating that he had personally served Alexandre by hand on May 5, 2022. D. 24 at 6, 8.

---

[1] Alexandre first moved to amend his complaint on August 29, 2022, seeking leave to add a few additional allegations. D. 8. At that time, before Defendants had responded to the initial complaint, he could freely amend his complaint pursuant to Fed. R. Civ. P. 15(a)(1)(A). Accordingly, the Court ALLOWS that motion *nunc pro tunc*. Id. Defendants, however, moved for dismissal of the amended complaint for several reasons, including failure to state a claim. D. 19; D. 21. In response, Alexandre filed a second motion to amend, and conceded that his first amended complaint "failed to state a claim." D. 24 at 2; see D. 25 at 2; D. 26 at 2. As all parties agree that the first amended complaint fails to state a claim, the Court ALLOWS Defendants' motions to dismiss. D. 19; D. 21. Accordingly, all that remains for the Court's resolution is the second motion to amend, D. 24, and the Court incorporates here the allegations included therein.

Alexandre appeared at the hearing for extension of the harassment prevention order on May 6, 2022. D. 20-1 at 2–3;[2] D. 24 at 6. At that hearing, the Chelsea District Court judge extended the harassment prevention order for a year until May 5, 2023. D. 20-1 at 3. Several weeks later, Benoit reported Alexandre's alleged violations of the harassment prevention order to the Revere Police Department. D. 24 at 13; D. 24-1 at 16–18. An arrest warrant was issued for Alexandre and a criminal case was opened. D. 20-2 at 2; D. 24 at 13. Alexandre alleges that Colannino mailed the summons in the criminal case to his old address. D. 24 at 6, 13–14.

## IV.     Procedural History

Alexandre instituted this action on August 19, 2022, D. 1, and later moved to amend the complaint, D. 8. Defendants moved for dismissal of all claims. D. 19; D. 21. Alexandre filed a second motion to amend his complaint and conceded his first amended complaint failed to state a claim. D. 24 at 2.

## V.     Discussion

### A.     **Motion to Amend**

In the proposed second amended complaint, Alexandre raises eight claims against Nichols and Colannino, namely (1) a "[d]ue notice" claim based on a Fourteenth Amendment violation (Counts I, V); (2) an equal protection Fourteenth Amendment violation (Counts II, VI), (3) a civil conspiracy claim under 42 U.S.C. § 1983 (Counts III, VII); and (4) an intentional infliction of emotional distress claim pursuant to the Massachusetts Torts Claim Act ("MTCA") (Counts IV, VIII). Id. at 8–18. Alexandre requests damages as to each claim and declaratory relief in relation to Counts I–III, V–VI. Id.

---

[2] The Court may take judicial notice of public records, including records from state court. See, e.g., Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008).

Since Alexandre's proposed second amended complaint "still fails to state a claim" upon which relief can be granted for at least the following reasons, denial of his motion to amend is warranted.  Bos. & Me. Corp. v. Town of Hampton, 987 F.2d 855, 868 (1st Cir. 1993) (citing cases).

### 1. Fourteenth Amendment Due Notice Claims (Counts I, V)

Count I appears to allege that Nichols violated Alexandre's Fourteenth Amendment right to constitutionally adequate notice of the May 6, 2022 hearing for extension of the harassment prevention order, while Count V appears to allege that Colannino violated Alexandre's Fourteenth Amendment right to constitutionally adequate notice of the summons in Alexandre's criminal case.  D. 24 at 8–9; 13–14.  Alexandre has not stated a claim as to either.

The Fourteenth Amendment requires "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (citing cases).  First, even assuming Nichols falsely signed a return of service, indicating that he had served Alexandre by hand on May 5, 2022 in relation to the May 6, 2022 hearing, Nichols could not have violated Alexandre's right to reasonable notice, because Alexandre, by his own concession, had already been served in person with same on April 30, 2022.  D. 24 at 6; D. 24-1 at 11.  Second, even assuming Colannino sent the summons in the criminal case against Alexandre to a prior address, Alexandre has failed to state a claim against him.  To begin, "[t]he [Supreme] Court has read an implicit bad faith standard into the notice inquiry, overturning notice even where formal procedures were followed if the notifying party knew or had reason to know that notice would be ineffective."  Sarit v. U.S. Drug Enf't Admin., 987 F.2d 10, 14 (1st Cir. 1993) (citing cases).  Besides Alexandre's conclusory allegation of bad faith, nothing

5

in the record suggests Colannino intentionally mailed the summons to an address that Alexandre no longer occupied. Moreover, sending notice to a last known or prior address has been found to be constitutionally adequate, see, e.g., Omegbu v. United States Dep't of Treasury, 118 F. App'x 989, 991 (7th Cir. 2004) (citing cases); Sarit, 897 F.2d at 13–16, which seems particularly reasonable here where Alexandre concedes in his proposed second amended complaint he had at least three addresses at the time and frequently stayed at friends' homes, see D. 24 at 4, 6, 8, 14. Finally, "[i]f a party receives actual notice that apprises it of the pendency of the action and affords an opportunity to respond, the due process clause is not offended." Baker v. Latham Sparrowbush Assocs., 72 F.3d 246, 254 (2d Cir. 1995) (citing cases). The record demonstrates that Alexandre learned of the pendency of the criminal action against him soon after its initiation and was afforded an opportunity to respond to the charges against him. D. 20-2 at 3; D. 24 at 6.

Accordingly, Counts I and V fail to state a claim against Nichols and Colannino, respectively.

        2.      *Fourteenth Amendment Equal Protect Claims (Counts II, VI)*

In Counts II and VI, Alexandre alleges Defendants violated his right to equal protection of the laws under the Fourteenth Amendment, because Defendants targeted him on account of his race and national origin. D. 24 at 10–11; 14–16. Neither count states a claim.

To state a claim for violation of his right to equal protection, Alexandre must plausibly allege that: "(1) [he], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Rubinovitz v. Rogato, 60 F.3d 906, 909–10 (1st Cir. 1995) (internal citation omitted). First, to satisfy the first prong, Alexandre must "identify and relate specific instances where

persons situated similarly in all relevant aspects were treated differently, . . . instances which have the capacity to demonstrate that [he] w[as] singled . . . out for unlawful oppression." Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989) (internal citations and quotation marks omitted).  The proposed second amended complaint, however, is completely devoid of such allegations, see generally D. 24, which warrants dismissal, Rubinovitz, 60 F.3d at 910 (affirming lower court's grant of summary judgment against plaintiffs' equal protection claim, where plaintiffs did not "identify others who were similarly situated").

Second, as to the second prong, Alexandre alleges Defendants targeted him on account of his race and national origin.  D. 24 at 10–11; 14–16.  The proposed second amended complaint, nevertheless, alleges no facts that would support an inference that either Defendant's actions were taken due to Alexandre's race or national origin.  See generally id.  Indeed, the only support for Alexandre's conclusory allegations is his own assumptions.  See, e.g., id. at 10 (stating that "[i]t is a fair assumption to say that officer Nichols does not falsify every summons that he has a duty to serve on members of the public that is involved in a civil or criminal case").  Such speculation is insufficient to state a claim.  See Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 225 (1st Cir. 2012).

Accordingly, Counts II and VI fail to state a claim against Nichols and Colannino, respectively.

### 3. 42 U.S.C. § 1983 Conspiracy Claims (Counts III, VII)

In Counts III and VII, Alexandre alleges Defendants engaged in a civil conspiracy to deprive him of his constitutional rights.  D. 24 at 11–12, 16–17.  To state a civil conspiracy claim, a plaintiff must allege "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an

agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (internal citation and quotation marks omitted). If the claim is brought pursuant to 42 U.S.C. § 1983, the plaintiff must also allege that the conspiracy resulted in "an actual abridgement of some federally-secured right." Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (citing cases); see 42 U.S.C. §1983. "However, a claim of conspiracy to deprive a plaintiff of civil rights will not survive a motion to dismiss if it makes conclusory allegations without making supporting factual assertions." Diaz v. Devlin, 229 F. Supp. 3d 101, 111 (D. Mass. 2017) (citing Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977)).

Here, for the reasons previously articulated, Alexandre has failed to plausibly allege "an actual abridgement of some federally-secured right." Nieves, 241 F.3d at 53 (citing cases). Furthermore, Alexandre's allegations of a civil conspiracy between Defendants are conclusory. For example, the only allegation regarding this conspiracy states that Colannino "gave notice to Nichols to falsify the paperwork[]." D. 24 at 11. The proposed second amended complaint does not allege when this conversation occurred, whether Defendants reached an agreement, which actions, if any, were agreed upon, or any other information indicative of a conspiracy between Defendants. Diaz, 229 F. Supp. 3d at 111 (dismissing civil conspiracy claim pursuant to 42 U.S.C. § 1983, where plaintiffs "make various conclusory allegations about the mindsets of those involved with the investigation. However, other than those legal conclusions which as a matter of law are insufficient to state a claim, the [c]omplaint does not contain any allegations that would support an inference that there existed a concrete agreement between the officers involved in the investigation to inflict any injury on or violate the rights of Plaintiffs").

Accordingly, Counts III and VII fail to state a claim against Nichols and Colannino, respectively.

### 4. *Intentional Infliction of Emotional Distress Claims (Counts IV, VIII)*

Finally, Count IV appears to allege intentional infliction of emotional distress against Nichols for allegedly falsely signing the return of service, while Count VIII appears to allege the same cause of action against Colannino for "target[ing]" Alexandre, "falsif[ying] documents," "conspir[ing]" against him, "intentionally sen[ding]" the summons to his prior address, and "initiat[ing]" the harassment prevention proceedings "with no evidence of harassment against" him. D. 24 at 12–13, 17–18. Alexandre's conclusory allegations fail to state a claim.

A claim for intentional infliction of emotional distress requires non-conclusory allegations showing: "(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it." Limone v. United States, 579 F.3d 79, 94 (1st Cir. 2009) (alteration in original) (quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144–45 (1976)). This standard "is very high," Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (citing Agis, 371 Mass. at 145), and conduct is "extreme and outrageous" only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987) (quoting Restatement (Second) of Torts § 46, comment d (1965)) (internal quotation marks omitted). A claim for intentional infliction of emotional distress

9

"requires more than 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" Doyle, 103 F.3d at 195 (quoting Foley, 400 Mass. at 99) (internal quotation marks omitted).

Alexandre's claims fail to state a claim for several reasons. First, the proposed second amended complaint contains no allegations that Defendants' alleged actions were directed at Alexandre and intended to cause him emotional distress. Agis, 371 Mass. at 144–45 (requiring "that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct" to state a claim (citations omitted)); see, e.g., Ahern v. Sig Sauer, Inc., No. 21-cv-11007-DJC, 2021 WL 5811795, at *4 (D. Mass. Dec. 7, 2021) (dismissing claim for intentional infliction of emotional distress, in part, because plaintiff made no allegation that defendant intended to inflict emotional distress or that defendant knew or should have known emotional distress would result); Gable v. Borges Constr., Inc., 792 F. Supp. 2d 117, 126 (D. Mass. 2011) (same); Dusoe v. Mobile Oil Corp., 167 F. Supp. 2d 155, 166 (D. Mass. 2001) (same).

Second, even assuming *arguendo* Defendants had such intention and knowledge, Alexandre has not alleged any actions on their part that would satisfy the high standard for extreme and outrageous conduct. The only non-conclusory allegations against Defendants in the proposed second amended complaint are: (1) Nichols signed an inaccurate return of service after Alexandre had already been served; (2) Colannino helped Benoit in obtaining a harassment prevention order against Alexandre; and (3) Colannino mailed a summons to Alexandre's prior address. D. 24 at 6. Alexandre cites no authority for the proposition that any of these actions "go beyond all possible

bounds of decency," are "atrocious," or are "utterly intolerable in a civilized community." Foley, 400 Mass. at 99 (internal citation and quotation marks omitted); see, e.g., Montel v. City of Springfield, 386 F. Supp. 3d 67, 78 (D. Mass. 2019) (concluding that "failure to employ police best practices" and "failure to provide a warning" did not bring officer's "conduct anywhere near 'extreme and outrageous' conduct"); Godette v. Stanley, 490 F. Supp. 2d 72, 81 (D. Mass. 2007) (concluding that arrest made without probable cause did not rise to the level of extreme and outrageous conduct).

Accordingly, Counts IV and VIII fail to state a claim against Nichols and Colannino, respectively, and Alexandre' second motion to dismiss, D. 24, warrants dismissal as futile.[3]

## VI. Conclusion

For at least the foregoing reasons, the Court ALLOWS Alexandre's first motion to amend, D. 8, ALLOWS Defendants' motions to dismiss, D. 19; D. 21, and DENIES Alexandre's second motion to amend, D. 24.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[3] Because the Court determines that Counts I–VIII do not state a claim on the merits, it need not reach Defendants' alternative arguments regarding sovereign immunity, quasi-judicial immunity, lack of standing, or qualified immunity. D. 27 at 4–5; 8–9; D. 28 at 4, 7.